IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PATRICK BERNARD BROWN                                              PLAINTIFF

v.                        Civil No. 1:24-CV-01033-CDC

GENE SIEGER, Administrator;
TOMMY RODGERS, formerly John or Jane Doe, Jailer;
CHRIS WILSON; JOEY TRIPP; and
JOSHUA OWENS                                                      DEFENDANTS

## MEMORANDUM AND ORDER

Plaintiff Patrick Bernard Brown has filed a civil rights action pursuant to 42 U.S.C. § 1983 generally alleging he received constitutionally inadequate medical care while detained at the Columbia County Detention Center ("CCDC").[1]   Plaintiff proceeds *pro se* and *in forma pauperis* (IFP).   *See* (ECF No. 3, 38).   All parties have consented to the jurisdiction of the undersigned magistrate judge to conduct all proceedings and for the entry of judgment in this case.   (ECF No. 26).

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 43).   Plaintiff has responded (ECF No. 48) and Defendants have replied.   (ECF No. 49). Nothing further is required, and this matter is ripe for decision.

---

[1] Plaintiff was incarcerated at the Ouachita River Correctional Unit, Arkansas Division of Correction ("ORCU-ADC") when he initiated this action. (ECF No. 1). He has since been released from custody.   *See* (ECF No. 29).   Upon his release, and consistent with the policies of this District, Plaintiff was ordered to either pay the balance of the $350 statutory filing fee or submit an updated IFP application reflecting his "free world" financial status.   (ECF No. 36).   Plaintiff elected to submit an updated IFP application, (ECF No. 37), which this Court subsequently granted. (ECF No. 38).

1

For the reasons outlined below, Defendants' Motion for Summary Judgment, (ECF No. 43), is **DENIED**, in part, and **GRANTED**, in part.

## BACKGROUND[2]

Plaintiff's complaint asserts two claims for relief.   Identifying July 7, 2023, July 9, 2023, July 17, 2023, and July 20, 2023, as dates of occurrence, Plaintiff first claims that while incarcerated at the CCDC, he was denied medical care for twelve (12) days. (Compl. at 4 (ECF No. 1)).   Plaintiff says that during booking, jail officials asked him about his medical conditions, at which time he explained he was under the care of a medical doctor for problems he was experiencing with his hip.   He says he requested medical attention, but Defendant Sieger denied those requests.   Plaintiff describes that his medical condition causes him severe pain, impacting his ability to get in and out of his bunk, impairing his mobility, and causing him to soil himself when he cannot get to the bathroom in time.   Plaintiff identifies Defendant Sieger as a defendant to this claim in her individual and official capacities.

Second, identifying October 30, 2023, November 5, 2023, November 24, 2023, and December 3, 2023, as dates of occurrence, Plaintiff claims he did not timely receive his prescribed medication which caused him to experience pain. *See* (Compl. at 6 (ECF No. 1)). He identifies Defendant Sieger and "jailers" as defendants to this claim in their individual and official capacities. Plaintiff seeks money damages.   *Id.* at 9.

Upon preservice review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a), this Court ordered Plaintiff's complaint be served on Defendant Sieger, the only named defendant at

---

[2] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of Defendants' Motion for Summary Judgment.

the time. (ECF No. 8).   After Defendant Sieger entered her Answer, this Court ordered Sieger to identify the names of the John or Jane Doe Jailer(s) who allegedly failed to dispense Plaintiff's prescribed medication as alleged in the complaint. (ECF No. 12).

Defendant Sieger's response identified Chris Wilson as the individual tasked with administering medication on October 30, 2023; Joey Tripp as the individual tasked with administering medication on November 5, 2023; and Joshua Owens as the individual tasked with administering medication on December 3, 2023.   (ECF No. 13).   The Clerk was directed to add Chris Wilson, Joey Tripp, and Joshua Owens as defendants to this action, *see* (ECF No. 14), and the undersigned ordered the complaint be served on them by certified mail, return receipt requested, (ECF No. 16).   Because Defendant Sieger's response identified six individuals who were on-duty on November 24, 2023 – the fourth day Plaintiff says he did not receive his medication as prescribed (ECF No. 13) – Plaintiff was ordered to identify which of these six individuals failed to provide him his medication as prescribed.   (ECF No. 14).   Plaintiff responded that Tommy Rodgers was tasked with administering medication on November 24, 2023, (ECF No. 18), and given this response, the Court directed that Tommy Rodgers be added as a defendant to this action and ordered service of the complaint on him. (ECF No. 19).

After all identified Defendants answered the complaint, the undersigned directed Defendants to either file a motion for summary judgment on the issue of whether Plaintiff properly exhausted his administrative remedies before initiating this matter in accordance with 42 U.S.C. § 1997e(a) by November 18, 2024, or to promptly inform the Court and parties that they did not intend to pursue failure to exhaust as an affirmative defense at trial. (ECF No. 22). Defendants opted for the latter, (ECF No. 27), after which an initial scheduling order was entered

3

which governed discovery and directed a motion for summary judgment on the merits be filed by April 14, 2025. (ECF No. 28). Upon motion, this Court granted Defendants' request to extend those deadlines and entered an amended initial scheduling order. (ECF No. 31). The amended scheduling order directed Defendants to file a motion for summary judgment on the merits by June 30, 2025. (ECF No. 32). After granting Defendants' Motion to Compel, (ECF No. 40), this Court also granted Defendants' request for an extension of time to complete discovery and to submit a motion for summary judgment. (ECF No. 42).

In their Motion for Summary Judgment (ECF No. 43-45), Defendants argue they are entitled to qualified immunity with respect to the individual capacity claims because the undisputed material facts show they were not deliberately indifferent to Plaintiff's medical needs; Defendants also argue entitlement to judgment as a matter of law with respect to the official capacity claims because there is no unconstitutional policy that violated Plaintiff's constitutional rights. *Id.* Plaintiff responded with a statement of indisputable material facts, affidavit, and brief, opposing Defendants' Motion for Summary Judgment. (ECF No. 48). As the Court understands it, Plaintiff argues none of Defendants are qualified to provide medical treatment or to administer prescribed medication. *Id.* Defendants replied that Defendant Sieger cannot be liable under a theory of *respondeat superior* and that there is no constitutional requirement that only medical providers administer prescribed medication to inmates. (ECF No. 49).

## LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury

4

to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).    A fact is material only when its resolution would affect the outcome of a case.    *Anderson*, 477 U.S. at 248.    Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."    *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).    In response, the nonmoving party "may not rest upon mere denials or allegations but must instead set forth specific facts sufficient to raise a genuine issue for trial."    *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).    In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party.    *Anderson*, 477 U.S. at 255.

## FACTS

On July 7, 2023, Plaintiff was booked into the Columbia County Detention Center ("CCDC") after waiving his right to a parole revocation hearing. (ECF No. 45-2 at 3).    During intake, Plaintiff responded, "No," to the question asking whether he "[had] any medications, prescriptions, or current medical problems that need attention" but noted he had been treated for asthma, drug addiction, and mental illness, and advised that he has a hip problem that was causing him pain.    *Id.*    Plaintiff also reported that he experiences "night sweats and night terrors." *Id.*

On July 9, 2023, Plaintiff submitted a grievance requesting a mat for his hip, explaining he had been scheduled for hip surgery prior to his incarceration.    (ECF No. 43-5 at 19).    On July 12, 2023, Plaintiff followed up with a grievance, asking if his parole officer informed anyone about his hip condition when he was booked into the CCDC.    *Id.*    At that time, Plaintiff explained that, prior to his incarceration, he was under the care of a doctor for his hip and was currently

experiencing pain. *Id.* The following day (July 13, 2023), Defendant Sieger responded saying that Plaintiff should have informed booking of his medical condition upon intake when they asked him a series of health-related questions, but that the facility would nevertheless provide him with any necessary medical care. *Id.*

On July 9, 2023, Plaintiff submitted a second, more detailed grievance, explaining that he was scheduled for hip surgery on July 19, 2023; that jail staff were denying his requests for a second mat to address the hip pain he experiences when he lays down; that he had been requesting to visit the doctor for three days but he has yet to see the doctor; and that he needs mobility aids for toileting purposes. (ECF no. 45-3 at 18). Records show Defendant Sieger reviewed the grievance on July 13, 2023. *Id.* That same day, Plaintiff followed up, saying that he has not seen the doctor for six days despite repeated requests, and that his pain was making it difficult for him to eat. *Id.*

On July 14, 2023, Plaintiff followed up again, writing, "7/14/23 they gave yard call this morning i wonted to go but i was not able to get out the bed still hurting and have not seen a doctor or talked to no one." *Id.* The grievance record shows Defendant Sieger reviewed Plaintiff's grievance three times – once on July 14, 2023, and twice on July 17, 2023. *Id.* On July 17, 2023, Sieger responded, saying, "ADC has been notified about your medical needs we are waiting on a response from them. You have been given an extra matt." *Id.*

On July 11, 2023, Plaintiff had submitted a grievance specifically directed at Mr. Martin, asking him to come talk to him and expressing that Plaintiff was experiencing pain. *Id.* at 17. On July 13, 2023, jail staff advised Plaintiff that Martin "will be given a copy of this request." *Id.* On July 17, 2023, Plaintiff submitted yet another grievance regarding his medical needs,

explaining that he has not yet seen a doctor despite repeated requests and that his pain was preventing him from eating and sleeping. *Id.* at 16. On July 18, 2023, Defendant Sieger reviewed the form, and responded saying, "I have faxed your information to ADC medical and I am waiting on a reply." *Id.*

On July 20, 2023, Plaintiff submitted at least his fifth grievance about not receiving any medical care despite multiple requests and explaining that his medical condition and corresponding limited mobility and pain were preventing him from making it to the bathroom in time, causing him to soil himself. *Id.* at 14. Defendant Sieger responded the next day (on July 21, 2023), saying that Plaintiff was seen by the nurse yesterday (on July 20, 2023), and that the nurse advised the doctor of his medical concerns. *Id.* at 15. Plaintiff disputed this account, writing on July 26, 2023, that he has not yet seen a doctor or a nurse and that he continues to experience pain. *Id.* at 13. On July 28, 2023, Defendant Sieger responded, saying, "You have been seen by the nurse today and advised to see the doctor tomorrow." *Id.*

Plaintiff's medical jail file illustrates that he requested to see the doctor twice on July 9, 2023, and on July 11, 2023, July 13, 2023, July 26, 2023, and July 28, 2023. (ECF No. 45-4 at 2-3). On July 12, 2023, Defendant Sieger submitted an Arkansas Department of Correction ("ADC") Health Services Request Form ("HSR"), reporting that Plaintiff was experiencing the following medical conditions: "Asthma; Needs Hip Replacement; Has ruptured disk in neck; has been treated for mental health problems." (ECF No. 45-4 at 4). A notation on the form reflects that it was received by ADC-Division of Correction, Medical Services on that same day. *Id.* Medical Services also responded that same day with the following: "May see designated jail provider. If action is needed, please submit clinical orders with a new HSR form." *Id.*; *see also* (ECF No. 45-

1 at ¶ 10).

The parties dispute whether Plaintiff was ever examined by the CCDC medical provider, Darrell Elkin.    Plaintiff testified under oath at his deposition that he did not receive any medication or treatment during his July 2023 incarceration at the CCDC.    (ECF No. 45-7 at 19).    Defendant Sieger, by contrast, asserts that after she received ADC approval for Plaintiff's medical care, Plaintiff was seen by CCDC medical provider "Darrell Elkin on or about July 30, 2023."    (ECF No. 45-1 at ¶ 11). There is a "medical call" note in Plaintiff's CCDC medical file. (ECF No. 45-4 at 5).    In the "description section," Plaintiff writes that he has been detained in the facility for 19 days but has not seen a doctor; he complains of pain and not being able to sleep. *Id.* He also reports a rash.    *Id.*    There is a handwritten, unsigned note on the form dated July 30, 2023, but the writing is difficult to decipher.    Defendants assert the unsigned note reads: "Was po [put on] Norco NKDA Δ [change] Naprosyn 500 mg." (ECF No. 45 ¶ 16).

On August 2, 2023, Plaintiff was released from the CCDC to the custody of the Arkansas Division of Correction ("ADC").    (ECF No. 45-2 at 3). On August 10, 2023, ADC-Health Services personnel entered a note stating: "RBVO Garner APRN/S Mayhue LPN, no work, walker for ambulation, Meloxicam 7.5mg. discontinue Naproxen." (ECF No. 45-8).    On October 6, 2023, Plaintiff was booked into the CCDC again. (ECF No. 45-2 at 5).    During this intake, Plaintiff reported he was taking medication, specifically "meloxicam 7.5 mg tablet daily."    *Id.* at 6.    He also reported neck pain and needing a hip replacement.    *Id.*

On October 18, 2023, Plaintiff submitted a medical request asking for a medication refill. (ECF No. 45-4 at 2). On October 19, 2023, Plaintiff submitted a second medical request stating, "i have not talk to anyone about my meds im in pain and i need it to be refilled." *Id.*    He also

8

submitted medical requests on November 11, 2023, November 20, 2023, and December 3, 2023, requesting to be seen by the doctor to address his hip pain. *Id.* at 1.

On October 30, 2023, Plaintiff submitted a grievance saying that his medication was not administered to him that morning. (ECF No. 45-3 at 10). The next day, Defendant Sieger responded, saying, "I will advise the doctor/nurse." *Id.*

On November 5, 2023, Plaintiff submitted another grievance about his medication, saying, "the jailers are not passing the meds out on time no one is reading on when a person need there med i need to take my meds in the morning with something to eat if i dont take it with food it will make my stomch upset." (ECF No. 45-3 at 8). Plaintiff followed up with this grievance on November 6, 2023, saying, "the jailer told me this morning that he did not have any meds for me 11-6-23." *Id.* Defendant Sieger responded, saying "I will look into this." *Id.*

Plaintiff submitted a third grievance on November 7, 2023, saying that no one administered his medication to him that day. *Id.* at 7. Defendant Sieger responded the next day, saying, "This has been taken care of." *Id.* On November 12, 2023, Plaintiff submitted yet another grievance, saying "I did not get my meds this morning the officer did not pass them out I was told that this would not happen again I stay in pain and when I miss taking the meds it seems to hurt more." *Id.* The next day, Defendant Sieger responded saying, "I will look into this and get it resolved." *Id.*

Evidently it was not resolved, because, again on November 18, 2023, Plaintiff submitted a grievance explaining that no one administered his meds to him in the morning; he had not seen the doctor for his pain despite repeated requests; and that he needed something soft to lay on. *Id.* at 4. On November 19, 2023, Plaintiff followed up with this grievance, saying "11-19-23 the jailer

9

she didnt bring me any meds this morning she told me she was going to look, and she never came back to let me know." *Id.* at 4-5.  On November 20, 2023, Defendant Sieger responded saying that the "doctor will be here tomorrow." *Id.* at 4.

The problem persisted.  On November 24, 2023, Plaintiff submitted a grievance saying, "i did not get my medication today it has been 3 days now i ask to see the doctor on 11-12-23 and i was told i would see him or her on 11-21-23 and i have not seen anyone yet i need and extra mat or blanket need something soft to lay and sit on." *Id.* at 4.  Four days later, Defendant Sieger responded saying that the doctor would be at the jail that day (November 28,2023).  *Id.*

On November 29, 2023, Plaintiff submitted the following grievance: "[Y]ou told me that the doctor would be here today the officer called one person out of the pod to see the doctor why come I did not see him today." *Id.* at 2.  Defendant Sieger responded on December 1, 2023, disputing that she told him that the doctor would be at the jail on November 29, 2023, and explaining that the "doctor comes on Tuesday." *Id.*

Dissatisfied with this response, Plaintiff submitted another grievance on December 3, 2023, explaining he has not been regularly receiving his medication even after Defendant Sieger said that she would resolve the issue; that he has been in custody for 30 days and has not seen the doctor, despite his repeated requests, and thus does not know how his medication is being refilled. *Id.* at 1.  Defendant Sieger responded to this grievance on December 5, 2023, saying that the doctor and nurse will be at the detention center that day and Plaintiff could discuss his medical needs with them directly. *Id.*

Defendants included only four pages of Plaintiff's medication history in support of their motion for summary judgment; those four pages provide information for October 29, 2023, to

October 31, 2023; November 5, 2023, November 7, 2023, and November 8, 2023; November 23, 2023, November 28, 2023, and November 29, 2023; and December 3, 2023, to December 5, 2023. (ECF No. 45-4 at 6-9).[3]   According to these records, Plaintiff plainly signed his initials indicating his received his medication (7.5 mg of Meloxicam) on October 29, 2023, October 31, 2023, November 8, 2023, November 29, 2023, December 3, 2023, December 4, 2023, and December 5, 2023.   (ECF No. 45-4 at 6-9).   The row for October 30, 2023, reflects "accepted," but someone wrote "none" in the inmate signature box.   *Id.* at 6.   The rows for November 5, 2023, and November 23, 2023, reflect "accepted" but the inmate signature box is blank.   *Id.* at 7-8.   The row for November 28, 2023, reflects "out of stock" and the inmate signature box is blank.   *Id.* at 8.   And the row for November 7, 2023, reflects "accepted" but there is a scribble in the inmate signature block—it is entirely unclear whether this scribble represents Plaintiff's signature or something else.   *Id.* at 7.   Plaintiff asserts that he did not receive his medication as prescribed on October 30, 2023, November 5, 2023, November 24, 2023, and December 3, 2023.   (ECF No. 1 at 6).   The Defendants provide no records of his medication history for November 24, 2023.   *See* (ECF No. 45-4 at 6-9).   Plaintiff was transferred to the ADC on February 20, 2024.   (ECF No. 45-2 at 5).   He was released from the ADC in December 2024, (ECF No. 45-7 at 27), and had hip surgery in March 2025, *id.* at 28.

Plaintiff testified at his deposition that his medical doctor originally scheduled him for hip replacement surgery in July 2023, and had prescribed him pain medication – namely, hydrocodone – prior to the surgery for pain.   (ECF No. 45-7 at 19-20).   Plaintiff testified that after his surgery

---

[3] It is unclear why the second page of Plaintiff's medication history omits November 6, 2023. Similarly, it is unclear why the third page of Plaintiff's medication history omits November 24— 27, 2023.

in March 2025, the surgeon advised Plaintiff that his hip had worsened since first scheduled for surgery in July 2023. *Id.* at 29.

Defendant Sieger asserts she is "not a medical professional [and] does not have the authority to prescribe treatment or medications." (ECF No. 45-1 at ¶ 6). Sieger says she relies on "the professional medical judgment of CCDC medical providers concerning examinations, diagnosis, and treatment of inmates' medical, mental health, and dental needs." *Id.* She maintains that she did "not interfere with Plaintiff's access to medical care." *Id.* at ¶ 12. Defendants Chris Wilson, Joey Tripp, Tommy Rodgers, and Joshua Owen all similarly argue they do not have authority or the ability to prescribe medication or to authorize prescription refills. *See* (ECF No. 45-9, 45-10, 45-11, and 45-12). Similarly, these Defendants all claim that if Plaintiff did not receive his medication during their respective shifts, it was because it had not been pre-packaged by CCDC medical personnel and thus, the medication was not available for distribution. *Id.* It is undisputed, of course, that none of the defendants are licensed medical professionals.

CCDC policies provide that "[d]etainees shall be provided access to necessary health care through routine sick call procedures" and that "[n]o employee or official of the county shall interfere with a detainee's access to a sick call." (ECF No. 45-5 at 1). The facility nurse conducts "sick call" weekly according to a schedule established by the facility administration and the facility doctor. *Id.* To obtain medical attention, detainees are directed to submit a request in writing clearly stating the problem. *Id.* Detainees are directed to hand the request to a jailer, who is then required to deliver the request to the "detention facility supervisor." *Id.* The detention facility supervisor refers requests that appear to be urgent to the facility doctor and places "non-urgent" requests in a box to be reviewed by the detention facility nurse. *Id.* at 1-2. The facility nurse

examines each detainee personally to determine their needs and refers more serious conditions to the detention facility doctor. *Id.* at 2. The facility nurse may "authorize non-prescription medications and treat detainees for minor problems not requiring a doctor's care." *Id.* Additionally, the facility nurse "keeps records of all sick call requests, the results of examinations and appointments, and prescribed medications" and "[s]chedules approved health care appointments outside the Detention Facility." *Id.* The facility doctor, in turn, "approves or disapproves" outside referrals made by the nurse and has "final authority" in all matters regarding medical, dental, or mental health treatment." *Id.*

CCDC jail staff are responsible for dispensing medications. *Id.* at 3. Specifically, "medications are kept in a locked cabinet and inventoried by each shift at the time of shift change" and the "senior jailer on shift dispenses all medication to detainees in accordance with prescription instructions or the instructions of the Detention Facility Nurse." *Id.* "Detainees are required to sign for all medication administered." *Id.* Further, "all prescribed medications admitted into the Detention Facility must be approved by the Detention Facility Administrator, or in his absence, the senior detention officer on duty. Only approved medication will be dispensed in the Detention Facility." (ECF No. 45-5 at 8). And "[a] medication log shall be maintained. All prescribed medications received for detainee use and dispensed within the Detention Facility shall be recorded on the log. Each entry must be signed by the detainee receiving the medication and initialed by the employee making the entry." *Id.* "Each detainee must receive all the medication prescribed for him in the quantities set forth on the prescription label. The employee responsible for dispensing prescribed drugs must witness the detainee taking the medication." *Id.*

Because the CCDC was detaining Plaintiff on behalf of the ADC, his medical care required

prior authorization and approval from the ADC.   (ECF No. 45-1 at ¶ 8).

## ANALYSIS

The undersigned recaps that Plaintiff's Complaint asserts two claims for relief 42 U.S.C. § 1983 – (1) that Defendant Sieger denied him medical care on July 7, 2023, July 9, 2023, July 17, 2023, and July 20, 2023; and (2) the Defendants failed to administer his medication as prescribed on October 30, 2023, November 5, 2023, November 24, 2023, and December 3, 2023. (ECF No. 1).   Plaintiff identifies Defendants in their individual and official capacities for both claims.   *Id.*

Defendants say they are entitled to qualified immunity with respect to the individual capacity claims because the undisputed material facts illustrate they were not deliberately indifferent to Plaintiff's medical needs. *See* (ECF No. 44).   Defendants contend further they are entitled to judgment as a matter of law with respect to the official capacity claims because the record shows Defendants did not implement an unconstitutional policy that violated Plaintiff's rights. *Id.*

In response, Plaintiff urges the Court to conclude that his medical care was constitutionally insufficient because none of the defendants who administered his medication were licensed medical professionals.   (ECF No 48).

## I.    **Individual Capacity Claims**

The Court first analyzes Defendants' qualified immunity argument.   To determine whether Defendants are entitled to qualified immunity, this Court conducts a two-part inquiry: "(1) whether the facts, viewed in the light most favorable to [Plaintiff], demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023) (cleaned up).

14

Courts "have the discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* (quoting *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022)). If the court concludes that "the alleged facts do not violate a constitutional right, then [the court] need not address the second inquiry, and the defendants will be entitled to qualified immunity." *Id.* (quoting *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018)).

Here, both claims concern the medical care Plaintiff received and/or failed to receive at the CCDC. The Eighth Amendment prohibition on cruel and unusual punishment requires "prison officials to provide inmates with medical care." *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). "To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to 'deliberate indifference to the prisoner's serious medical needs." *Id.* at 1237-38 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).[4] Deliberate indifference includes an objective and subjective component: "The plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany*, 132 F.3d at 1239) (cleaned up).[5]

---

[4] The same standard applies regardless of whether the inmate was a convicted prisoner or a pretrial detainee during the events giving rise to his claims. *See Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (applying the Eighth Amendment deliberate indifference standard to a medical indifference claim brought by a pretrial detainee).

[5] In his Complaint, Plaintiff describes claim two as a "conditions of confinement" claim. (ECF No. 1). The court's analysis of such a claim depends on whether the plaintiff was a pretrial detainee or a convicted prisoner at the time of the events giving rise to his claim. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906-07 (8th Cir. 2020). Because Plaintiff's claim two also concerns the medical care he received (or failed to receive) while detained at the CCDC, the Court concludes that it is appropriate to analyze both claims under the established Eighth Amendment "deliberate indifference" standard.

15

### A.    Objectively Serious Medical Need

With respect to the first prong, "[a] medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).   Courts "determine whether an objectively serious medical need exists based on the attendant circumstances, irrespective of what the officer believes the cause to be." *Barton v. Taber*, 820 F.3d 958, 965 (8th Cir. 2016) (listing cases).

Here, "Defendants do not dispute that Plaintiff's hip condition, and the medication prescribed to treat his hip condition constitute a serious medical need." *See* (ECF No. 44 at 4). The Court thus easily concludes from Defendants' admission that Plaintiff was suffering from an objectively serious medical condition during his incarcerations at the CCDC.   Put differently, the objective prong of the deliberate indifference standard has been met, requiring analysis of the subjective prong two.

### B.    Deliberate Indifference

Under the subjective prong of the deliberate indifference standard, "[the plaintiff] must show that an official actually knew of but deliberately disregarded his serious medical need." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (internal citation and quotation omitted). This showing requires a mental state "akin to criminal recklessness." *Id.*   "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

### Claim One (Failure to Provide Medical Care)

Regarding claim one, Plaintiff says Defendant Sieger denied him medical care during his first period of incarceration at the CCDC from July 7, 2023, to August 2, 2023. *See* (ECF No. 1).

### i.     Defendant Sieger Knew of Plaintiff's Medical Condition

It is undisputed that from July 9, 2023, to July 30, 2023, Plaintiff repeatedly filed grievances and medical requests asking to see the doctor because he was in pain with reports that his pain prevented him from eating and sleeping, impaired his mobility, and caused him to soil himself because he could not timely reach the toilet. Defendant Sieger was plainly aware of these requests because she responded to his grievances, *see* (ECF No. 45-3), and because she requested permission from the ADC to treat his condition, *see* (ECF No. 45-4 at 4). Further, pursuant to CCDC policy, as jail administrator, it was her responsibility to "review all [sick call requests] to determine urgency," to refer requests she deems urgent to the facility doctor "without delay," and to place requests she deems "non-urgent" in a box for the detention facility nurse to review.[6] Thus, Defendant Sieger was plainly aware of Plaintiff's medical condition – namely, his pain and the effects of his pain on daily life activities such as eating and sleeping – because she reviewed his medical requests. *See* (ECF No. 45-4 at 3).

---

[6] The CCDC policy specifically tasks the "Detention Center Administrator" with these responsibilities. *See* (ECF No. 45-5). The policy does not define "Detention Center Administrator," at least not the excerpts provided by the Defendants in support of their motion for summary judgment. Pursuant to Arkansas state law, however, "[c]ounty sheriffs and other keepers or administrators of jails within the State of Arkansas are responsible for managing the populations and operations of their respective facilities in compliance with the laws and the Arkansas Constitution and within the requirements of the United States Constitution." Ark. Code Ann. § 12-41-503. Given Defendant Sieger's role as jail administrator, the responsibilities of the jail administrator under Arkansas state law, and the responsibilities of the Detention Center Administrator pursuant to CCDC policies, the Court has no trouble concluding that the responsibilities of "Detention Center Administrator" and "jail administrator" are coterminous.

17

ii.    *There is a material fact dispute about whether Defendant Sieger deliberately disregarded Plaintiff's medical needs.*

Defendants nevertheless contend that Defendant Sieger did not deliberately disregard Plaintiff's medical condition.

Defendants argue Plaintiff was examined by medical professionals on July 30, 2023, and thus his claim amounts only to a "delay in medical care."   (ECF No. 44 at 5-6). "A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant *intentionally delayed* or denied *access to medical care*." *Dantzler v. Baldwin*, 133 F.4th 833, 846 (8th Cir. 2025) (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (emphasis added) (citations omitted).   "But if a plaintiff 'alleges that a *delay* in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation *should also* be measured by reference to the effect of delay in treatment.'" *Cheeks v. Belmar*, 80 F.4th 872, 878 (8th Cir. 2023) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).   "An inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs."   *Coleman*, 114 F.3d at 784.

Defendants then argue that the failure to provide medical care claim fails as a matter of law because Plaintiff did not introduce any verifying medical evidence establishing that a purported 21-day delay in providing him medical treatment (from July 9, 2023, to July 30, 2023), had a detrimental effect on his condition.   *See* (ECF No. 44 at 9).

There are two problems with Defendants' argument. First, there is a material fact dispute about whether Plaintiff received medical treatment *at all* during his first period of incarceration at

18

the CCDC. While Defendants contend the unsigned July 30, 2023, note in Plaintiff's CCDC medical file establishes he was examined by a medical professional on that date, this Court is not convinced: There is nothing in the summary judgment record establishing *who* authored this note, or whether this note reflects that Plaintiff was, indeed, examined by a medical provider and prescribed treatment. (ECF No. 45-4 at 5).

And to the extent Defendants urge inference that Plaintiff was prescribed some medication, there is nothing in the record showing what this medication was intended to treat or whether it was ever administered to Plaintiff. Put another way, this note has not been authenticated and there is nothing in the summary judgment record from the medical provider himself establishing that Plaintiff was seen and treated on July 30, 2023, or any other day during his Plaintiff's first period of incarceration at the CCDC. Plaintiff, moreover, testified under oath at his deposition that he received no medical treatment during his first period of incarceration at the CCDC. (ECF No. 45-7 at 19). At the summary judgment stage, "the Court may not make credibility determinations or weigh the evidence before it." *Ahlgren v. Muller*, 555 F.3d 688, 701 (D. Minn. 2021) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). For these reasons, the Court the Court finds that there is a fact dispute about whether Plaintiff was seen by a medical professional during his first period of incarceration at the CCDC (July 7, 2023, to August 2, 2023).[7]

---

[7] Similarly, Defendants frame Plaintiff's claim as a dispute about the type of treatment he received, contending that Plaintiff's complaint is that he did not immediately receive a hip replacement when he was incarcerated at the CCDC. *See* (ECF No. 44 at 4). *See Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (a complaint about nothing more than "mere disagreement with the course of his medical treatment" fails to state an Eighth Amendment claim of deliberate indifference). The Court disagrees. Plaintiff contends that he received no medical care during his first period of incarceration at the CCDC, namely, from July 7, 2023, to August 2, 2023. (ECF No. 45-7 at 19). Accordingly, as noted above, this case is not about *how* Plaintiff was treated, but whether he was treated *at all*.

19

And, importantly, this dispute is material.   To the extent that Plaintiff received no medical care during this period, the facts here are analogous to *Cheeks v. Belmar*, 80 F.4th 872 (8th Cir. 2023)*.   In *Cheeks*, officers conducted a PIT maneuver on a car, which then crashed into a tree, but they did not render aid or call 911.   *Cheeks*, 80 F.4th at 875. An eyewitness ultimately called 911 but the driver died at the scene. *Id.*   The Eighth Circuit concluded that the plaintiff was not required to show a detrimental effect of the lack of aid because officers had failed to render *any* aid. *Id.* at 879.

Second, even if Plaintiff was examined by a medical professional on July 30, 2023, this is not a case of mere "self-reported assertions of pain" without "corroborating evidence of symptoms." *See Hancock v. Arnott*, 39 F.4th 482, 487 (8th Cir. 2022) (concluding that "[w]ithout corroborating evidence of symptoms, [] self-reported assertions of pain are insufficient to survive summary judgment).   It is undisputed that Plaintiff's pain interfered with his ability to perform daily life activities, including eating, sleeping, and toileting, and the summary record shows that the medication he was ultimately prescribed by the ADC alleviated his pain. *See* (ECF No. 45-3 at 6-7).   If – as Defendants assert – there was a 21-day delay in providing Plaintiff with any medical treatment, a reasonable jury could conclude that this delay caused him to experience pain "for no good reason." *Dantzler*, 133 F.4th at 845 (discussing *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007)).

Notably, "a prison official may nonetheless act with deliberate indifference by *delaying* the treatment of serious medical needs, ... though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable."   *Dantzler*, 133 F.4th at 847 (quoting *Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (emphasis added)

(internal quotation marks omitted).    Thus, even if Plaintiff received medical care on July 30, 2023, there is nothing in the record offering *any medical* reason for the delay in treating Plaintiff for his pain (and its resulting effects on his daily life activities) from July 9, 2023, to July 30, 2023 – for a condition Defendants concede was objectively serious.    Defendant Sieger simply asserts a single *nonmedical* reason for the delay: that she was required to obtain permission from the ADC to treat Plaintiff because even though he was housed at the CCDC, he was in the custody of the ADC. (ECF No. 45-1 at ¶ 8).    The record shows that on July 9, 2023, Plaintiff submitted a grievance saying that he has not seen a doctor about his hip pain despite repeated requests, and this corresponds with Plaintiff's July 9, 2023, medical request to see the doctor for his hip pain. (ECF No. 45-4 at 3, 18).    Three days later, on July 12, 2023, Defendant Sieger requested permission from the ADC to treat Plaintiff.    (ECF No. 45-4 at 4).    Even though the ADC granted that request the same day (on July 12, 2023), *see* (ECF No. 45-1 at ¶ 10), Plaintiff nevertheless was not examined by a medical professional and received *no* medical attention until (at the earliest) July 30, 2023, eighteen days later.    *See* (ECF No. 45-4 at 5).    There is nothing in the record explaining this (or any other delay).[8]

To no avail, Defendant Sieger makes the unsupported argument that she did not interfere with Plaintiff's access to medical care. (ECF No. 45-1 at ¶ 12).    It is undisputed that she was aware of his requests for medical attention, and that she, as jail administrator, was responsible for screening medical requests and for placing "non-emergency requests" in a box for the detention

---

[8] As noted above, the record reflects that Defendant Sieger requested and received permission from the ADC to treat Plaintiff on July 12, 2023.    *See* (ECF No. 45-4 at 4).    The Court therefore finds it peculiar that Defendant Sieger reported to Plaintiff that she was still waiting for the ADC's permission to treat Plaintiff as of July 18, 2023.    *See* (ECF No. 45-3 at 16).

facility nurse to collect and review.   Further, it is undisputed that Sieger *did not* immediately place Plaintiff's medical request in the box for the detention facility nurse to review but instead requested permission from the ADC to treat Plaintiff.   The Court ponders:   Why did Sieger wait three days to request permission to treat Plaintiff after receiving his medical request? Why did she represent to Plaintiff that she was still waiting for ADC's permission to treat him, five days after securing it?   What, then, did Defendant Sieger do with Plaintiff's multiple requests for medical treatment?   Why was Plaintiff not seen for at least twenty-one days after he submitted his first request for medical attention and eighteen days after Defendant Sieger obtained permission from the ADC to treat him?   As to these questions, the record is silent.    On this record, therefore, even if Plaintiff was examined by a medical professional on or about July 30, 2023 (a material fact in dispute), the Court finds that a reasonable jury could conclude that Defendant Sieger was deliberately indifferent to Plaintiff's serious medical condition during his first period of incarceration at the CCDC from July 7, 2023, to July 30, 2023.[9]

### iii.      *"Clearly Established" Right*

This conclusion, however, does not end the Court's qualified immunity analysis.   Rather, "[t]o overcome qualified immunity, [Plaintiff] must show that every reasonable official in [Defendant Sieger's] position would have understood that [delaying or denying Plaintiff's access to medical care] violated that right." *Dantzler*, 133 F.4th at 849 (quoting *Fisherman v.*

---

[9] This, then, is *not* a case of a prison official deferring to a medical professional regarding a prisoner's medical care.   *See McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009) ("A prison official may rely on a medical professional's opinion if such reliance is reasonable).   By contrast, there is a material fact dispute about whether Plaintiff received any medical care at all.   Further, even if he did receive medical care 21-days after he first requested it, there is nothing in the record establishing that Defendant Sieger relied on some qualified medical professional's judgment in not facilitating care *earlier*.

*Launderville*, 100 F.4th 978, 981 (8th Cir. 2024)). Put differently, Plaintiff "bears the burden of showing that the law is clearly established." *Id.* (citing *Dean v. Bearden*, 79 F.4th 986, 989 (8th Cir. 2023)). Regardless of "how the plaintiff shows clearly-established law – existing precedent, robust consensus of cases of persuasive authority, or an obvious case – that law must 'clearly prohibit the official's conduct in the particular circumstances before her." *Id.* (quoting *Hovick v. Patterson*, 37 F.4th 511, 517 (8th Cir. 2022). Further, "[t]he rule's contours must be so well defined that it is clear to a reasonable official that [her] conduct was unlawful in the situation [she] confronted." *Id.* (cleaned up). The Court "undertake[s] this inquiry 'in light of the specific context of the case, not as a broad general proposition." *Id.*

The question is whether it is clearly established that intentionally delaying or denying medical care to an inmate complaining of pain that interfered with his daily living activities – *i.e.*, eating, sleeping, toileting—violates the inmate's constitutional rights. The answer to this question is yes.

First, "circuit precedent clearly establishes that an inmate can prove deliberate indifference by showing that a prison official 'intentionally delayed . . . access to medical care." *Id.* (quoting *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)). Second, as noted above, while the delay of medical care for nonmedical reasons *may* amount to deliberate indifference, *see Dantzler*, 133 F.4th at 850, it is clear from this record that a nonmedical reason accounted for (at most) a 3-day delay in treatment, there is no reason in the record – medical or nonmedical – to explain an 18-day delay in treatment (at least). Accordingly, the facts here are closely analogous to *Dadd v. Anoka Cnty.*, 827 F.3d 749 (8th Cir. 2016). In *Dadd*, the plaintiff, a pretrial detainee, told the jail nurse that he was recovering from dental surgery, was in severe pain, and had been prescribed Vicodin

23

to alleviate the pain.  *Dadd*, 827 F.3d at 753.  The nurse, however, refused the plaintiff's request to take his medication (which the arresting officer had brought with him to the jail) or over-the-counter pain medication to help with his pain.  *Id.*  The nurse also refused to follow the jail doctor's directives to give the plaintiff an over-the-counter pain reliever, three times a day.  *Id.* at 754.  Plaintiff remained in excruciating pain, unable to eat or sleep, without any pain relief during his three-day incarceration. The "clearly established" principle discerned from *Dadd* "is that a *complete* failure to treat an extremely painful (or other serious) condition displays a reckless indifference to a serious medical need." *Id.* at 757.

Similarly, in this case, Defendant Sieger was aware of Plaintiff's medical condition, that he was in pain, and that the pain was interfering with his life activities, such as eating, sleeping, and toileting.  Despite this knowledge, Defendant Sieger intentionally delayed his medical care by at least three days to obtain permission from the ADC to treat him (a nonmedical reason).  Even after obtaining permission, Plaintiff's medical treatment was inexplicably delayed for another 18 days (at minimum) even though Defendant Sieger was on notice that he was not being seen by a medical provider and was continuing to experience pain.  On this record, the Court finds *Dadd* put Defendant Sieger on "fair notice" that failing to take further action to address Plaintiff's medical condition violated clearly established law.  Defendant Sieger is therefore not entitled to qualified immunity with respect to claim one.

### *Claim Two (Failure to Administer Prescribed Medication)*

The Court must view claim two differently.  With respect to this claim, recall that Plaintiff alleges that jail officials did not administer his medication as prescribed on October 30, 2023, November 5, 2023, November 24, 2023, December 3, 2023. (Compl. at 6).

24

To be sure, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of paint.' . . . This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 428 U.S. at 104-05.

Here, Plaintiff's inmate medication history is, at best, incomplete. *See* (ECF No. 45-4). Viewing the facts in the light most favorable to Plaintiff, this history shows that he did not receive his medication as prescribed on October 30, 2023, November 5, 2023, November 23, 2023, or November 28, 2023. *See id.* Because the parties did not include his entire inmate medication history, the Court cannot conclude whether he received (or did not receive) his medication as prescribed on any other day.

Plaintiff sues Defendant Sieger and the jail officials assigned to administer medications on the days he did not receive his – namely, Chris Wilson, Joey Tripp, Tommy Rodgers, and Joshua Owens – on the theory that they interfered with his medications.   The Court starts with the claims against the jail officials (Defendants Wilson, Tripp, Rodgers, and Owens).

### a.   Claim Two against Defendants Wilson, Tripp, Rodgers, and Owens

The insufficiency of Plaintiff's claim against Defendants Wilson, Tripp, Rodgers, and Owens is basic: "Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) ("Section 1983, of course, requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation.   Absent such a relationship, the

25

defendant is entitled to dismissal.") (citation omitted); *see also Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

It is undisputed that Defendants Wilson, Tripp, Rodgers, and Owens are not medical professionals, and they do not have authority to prescribe medication; their limited role is to distribute medication to inmates that had been prepackaged by CCDC medical personnel. Defendants Wilson, Tripp, Rodgers, and Owens credibly assert that if they did not distribute prescribed medication, it was because that medication had not been made available for their distribution. Plaintiff does not dispute this assertion and admitted during his deposition testimony that he did not believe it was the jailers' fault that he did not receive his medication and that he did not believe they were not giving (or withholding) his medication on purpose. *See* (ECF No. 45-7 at 33).

The Court agrees. On the record before it, the undersigned finds it undisputed that Defendants Wilson, Tripp, Rodgers, and Owens did not *intentionally* interfere with Plaintiff's prescribed medications. Defendants Wilson, Tripp, Rodgers, and Owens therefore did not violate Plaintiff's right to constitutionally adequate medical care.

This conclusion is not altered by Plaintiff's new assertion that Defendants Wilson, Tripp, Rodgers, and Owens were not licensed medical professionals authorized to dispense medication. Plaintiff's argument, it seems, goes something like this: even when Defendants Wilson, Tripp, Rodgers, and Owens distributed his medication as prescribed (because it was available to be distributed), they were violating his constitutional rights because they were not licensed to do so. The problem with this argument, as Defendants point out, is that Plaintiff has no constitutional

26

right to be provided medication only by medically trained personnel. *See, e.g.*, *Phillips v. Parker*, Case No. 3:24-CV-03054-CDC, 2025 WL 557456, at *2 (W.D. Ark. Jan. 31, 2025) ("[T]here is no constitutional right to have medication distributed only by trained medical personnel.") (listing cases), *R&R adopted by* 2025 WL 553646 (W.D. Ark. Feb. 19, 2025).   Defendants Wilson, Tripp, Rodgers, and Owens are therefore entitled to summary judgment with respect to Plaintiff's claim two.

### b.    Claim Two Against Defendant Sieger

This leaves Plaintiff's claim two against Defendant Sieger.   Plaintiff does not contend that Defendant Sieger personally failed to prepackage or administer his medication; rather, Plaintiff seeks to hold Defendant Sieger liable because of her role as jail supervisor. *See* (ECF No. 45-7 at 34).

"In the section 1983 context, supervisor liability is limited." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). "A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions." *Id.* (quoting *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)). "Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Id.* (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).   Put differently, "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."   *Id.* (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (internal citation and quotation omitted).

As a threshold matter, the undersigned is not convinced that failure to receive medication during Plaintiff's second period of incarceration at the CCDC (from October 6, 2023, to February

20, 2024), amounts to a constitutional violation. Viewing the facts most favorable to Plaintiff, he did not receive his medication as prescribed five (5) times during this four-month period: October 30, 2023, November 5, 2023, November 7, 2023, November 23, 2023, and November 28, 2023. (ECF No. 45-4). "It is well settled that the periodic, negligent failure to properly dispense prescription medications is not deliberate indifference, and thus, insufficient alone to support a constitutional claim." *Woods v. Elkin*, Case No. 3:24-CV-00115 (BSM/ERE), 2025 WL 3466610, at *8 (E.D. Ark. Nov. 13, 2025) (listing cases), *R&R adopted by* 2025 WL 3464887 (E.D. Ark. Dec. 2, 205). Here, there are no facts (disputed or otherwise) establishing that jail medical personnel *intentionally* failed to prepackage or timely refill his prescribed medication. *See Dulany*, 132 F.3d at 1245 ("A number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference without some specific threat of harm from a related system wide deficiency[.]").

In any event, where a "supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Davis v. Buchanan Cty.*, 11 F.4th 604, 624 (8th Cir. 2021) (quoting *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)).

Here, Plaintiff's individual capacity claim against Defendant Sieger begins and ends at the first element. While undisputed that Defendant Sieger was aware Plaintiff was not getting his medication as prescribed because she was responding to his grievances about the problem, *see* (ECF No. 45-3), a "single incident, or a series of isolated incidents, is usually insufficient to infer

a pattern." *Davis*, 11 F.4th at 624 (quoting *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018)).   There is nothing in the record establishing that Defendant Sieger was on notice of a systemic failure or pattern of failures by CCDC medical personnel to prepackage inmates' medication or timely refill prescribed medication.  Accordingly, the record falls short of establishing that Defendant Sieger was on notice of a pattern of similar unconstitutional conduct by CCDC medical personnel.  *See Davis*, 11 F.4th at 625 (two previous lawsuits regarding inadequate medical treatment at the jail was insufficient to put jail officials on notice of a pattern of constitutional violations at the jail).   Plaintiff's individual capacity claim against Defendant Sieger as to claim two fails as a matter of law.

## II.     Official Capacity Claims

Turning finally to Plaintiff's official capacity claims, an official capacity claim is the same as a claim against the individual official's employer, or, in this case, Columbia County.   *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).   A municipality such as Columbia County cannot be held liable for the torts of their employees on a theory of *respondeat superior*.   *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor[.]").   Instead, "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."   *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations and quotations omitted) (cleaned up).

With respect to claim two, as described in detail above, Plaintiff has failed as a matter of law to establish that the Defendants violated his constitutional rights.   For this reason, Plaintiff's

official capacity claims against the Defendants similarly fails as a matter of law.  *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) ("[T]here must be an unconstitutional act by a municipal employee before a municipality can be held liable[.]").

Regarding claim one, Plaintiff asserts that his constitutional violations resulted from an unconstitutional Columbia County policy.  *See* (ECF No. 1 at 5 & 7).  Specifically, Plaintiff claims that "[i]t is the policy of this detention facility to provide adequate medical services for the detainees housed in this facility.  Detainees are seen once a week by a registered nurse or a licensed doctor."  *Id.*  But he asserts no facts describing *how* this policy is unconstitutional, or more to the point, how this policy caused his constitutional violations. *See Nur v. Olmsted Cty.*, 563 F.Supp.3d 946, 954-55 (D. Minn. 2021) (to establish municipal liability the plaintiff must establish causation "*i.e.*, that the policy, custom, or failure to train was the 'moving force' behind the constitutional violation").  In this case, by contrast, Plaintiff does not claim that the CCDC policy *caused* the constitutional violation – rather, he argues that Defendant Sieger *violated* CCDC policy by denying his requests to see medical personnel during his first period of incarceration at the CCDC (from July 7, 2023, to August 2, 2023).  Accordingly, Plaintiff's official capacity claim with respect to claim one also fails as a matter of law.

## CONCLUSION

For the reasons described above, this Court recommends that Defendants' Motion for Summary Judgment, (ECF No. 43), be **GRANTED**, **in part, and DENIED, in part, as follows:**

1.     Defendants' Motion is **DENIED** with respect to Plaintiff's claim against Defendant Sieger, <u>in her individual capacity,</u> for failing to provide him with medical care from July 7, 2023, to August 2, 2023 (Claim One).

2.      Defendants' Motion for Summary Judgment is **GRANTED** in all other respects.

Plaintiff's Claim One against Defendant Sieger <u>in her official capacity</u> is **DISMISSED WITH PREJUDICE**, and Plaintiff's Claim Two is **DISMISSED WITH PREJUDICE** in its entirety.

**IT IS SO ORDERED** this 21st day of January 2026.

*/s/ Christy Comstock*
_____

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE